RECEIVED
IN LAKE CHARLES, LA
JUL 12 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RITA MAE RICHARD** | : | **DOCKET NO. 2:07 CV 0050** |
| **VERSUS** | : | **JUDGE WALTER** |
| **GEORGIA GULF LAKE CHARLES, LLC, ET AL** | : | **MAGISTRATE JUDGE WILSON** |

**AND ALL CONSOLIDATED CASES**

**REPORT AND RECOMMENDATION**

Presently before the court are motions to remand filed in each of these consolidated cases. The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiffs allege that they suffered damages as a result of a leak of ethylene dichloride from the Georgia Gulf Lake Charles, LLC (Georgia Gulf) facility on September 17, 2006. These suits were brought against Georgia Gulf and Mark Jakel (Jakel), the plant manager, in the 14th Judicial District Court for Calcasieu Parish. Georgia Gulf removed the cases to this court alleging that this court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs have now moved to remand contending that: (1) this court does not have original diversity jurisdiction because both plaintiffs and Jakel are citizens of Louisiana; (2) Jakel has not consented to removal; (3) Georgia Gulf has failed to establish that it is not a citizen of Louisiana; and (4) that the requisite jurisdictional amount is not in controversy.

Fraudulent/Improper Joinder

Both Plaintiffs and Jakel are citizens of Louisiana. Ordinally this fact would preclude

jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity would be missing. *See Carden v. Arkoma Associates*, 110 S.Ct. 1015 (1990). However, Defendant contends that in assessing this court's jurisdiction Jakel's citizenship should not be considered in that he has been fraudulently/improperly joined.[1] If Jakel was fraudulently/improperly joined then his presence will not bar this court's jurisdiction. In addition, in that event it is not necessary to obtain his consent to removal. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

Once a case has been removed, the burden lies with the removing party to prove that the court has jurisdiction to decide the claim. *Jernigan v. Ashland Oil Inc.* 989 F.2d 812, 815 (5th Cir. 1993)(citing, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)). One prerequisite to removal is that this court must have original jurisdiction. 28 U.S.C. § 1441(a). Defendant relies on diversity jurisdiction pursuant to 29 U.S.C. § 1332 to satisfy this requirement. If removal is based on the claim that non-diverse parties have been improperly joined, then the removing party must establish either: "actual fraud in the pleading of jurisdictional facts," or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)(*en banc*), *cert. denied by*, *Illinois Cent. R. Co. v. Smallwood*, ___ U.S. ___, 125 S.Ct. 1825 (4/18/2005)(citing, *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)). There is no alleged fraud in these cases. Accordingly, our focus is the second basis for improper joinder. *See, Travis, supra.*

The focus of the court's inquiry is on the joinder of the forum state citizen, not on the

---

[1] For years the term "fraudulent joinder" was used. The Fifth Circuit now refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).

2

merits of Plaintiff's case. *Smallwood, supra* at 573. In resolving this issue, we must determine whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the in-state/non-diverse defendant; *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against the in-state/non-diverse defendant. *Smallwood, supra.*

The court may resolve this issue in one of two ways: 1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the in-state/non-diverse defendant under state law (*i.e.* a Fed.R.Civ.P. 12(b)(6) analysis); or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood, supra.* Ordinarily, if Plaintiff survives the 12(b)(6) analysis there is no improper joinder. *Id.* The "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id* at 573-74.[2] The motive or purpose for the joinder of the in-state defendant is irrelevant to this inquiry. *Id.* at 574. The court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis, supra.* Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish improper joinder, then diversity is not complete (and/or removal is improper), and remand is required. *Id.*

Plaintiffs allege that on September 17, 2006, an EDC cracking furnace at the Georgia Gulf facility failed causing an ethylene dichloride leak. The ethylene dicholoride vapors were

---

[2] In other words, facts that can be easily disproved if not true. *Id.*

3

ignited by an adjacent furnace. This caused an explosion which released ethylene dichloride, vinyl chloride, hydrogen chloride, ethyl chloride, ethylene, chloroform, carbon tetrachloride, ethane and propylene. It is further alleged that the initial leak was caused by Georgia Gulf's failure to properly maintain the EDC cracking furnace, and that once it was learned that a leak had occurred it failed to take proper action in order to minimize the release of chemicals. With regard to Jankel Plaintiffs allege that he contributed to the excessive release of toxic chemicals by failing to maintain, repair or replace the EDC cracking furnace in a timely fashion. They also allege that Jakel was at fault in: (1) intentionally causing Georgia Gulf to release toxic chemicals into the environment; (2) managing the refinery in a negligent manner; (3) failing to take adequate steps to eliminate or reduce the release of toxic chemicals; (4) failing to warn plaintiffs of the toxic chemical release; (5) improper handling and storage of hazardous materials; and (6) failing to authorize and direct proper maintenance, repair and replacement of the EDC cracker furnace.

In *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973) the Louisiana Supreme Court considered when and under what circumstances an officer or employee can be individually liable to a third person damaged solely by reason of the officer's or employee's breach of an employment-imposed duty. The court established the following criteria as essential for imposing individual liability in this situation:

> 1. The principal or employer must owe a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
>
> 2. This duty must be delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee must have breached this duty through

> personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
>
> 4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

283 So.2d at 721.

The circumstances in *Guillory v. PPG Industries, Inc.*, 434 F.3d 303 (5th Cir. 2005) were very similar to those found in the present case. Plaintiffs had brought suit in state court seeking damages for the release of toxic chemicals from PPG's Lake Charles facility. The plant manager was included as a defendant with the plaintiff claiming that he was, in part, liable. As here, defendants removed the case to federal court contending that the plant manager had been fraudulently/improperly joined. The Court held that defendant had borne its burden of establishing no possibility of recovery against the plant manager when they presented uncontroverted evidence that: (1) the manager had delegated his general responsibility for safety to subordinates, (2) there was no evidence that the manager had delegated his responsibility without due care, and (3) there was no evidence that the manager knew or should have known that the delegated officials were not performing their duties. *Id.* at 312.

5

The Fifth Circuit also addressed a similar situation in *Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994). This was also a suit against a plant manager for damages caused by the explosion of a reactor. However, the court held that the defendants had failed to show that there was no possibility of recovery against the plant manager based on affidavits of company employees indicating that the plant manager had actual knowledge of the dangers presented by the reactor before the explosion. *Id.* at 939.

Defendant has filed the affidavit of Jakel. Doc. 24, Exh. B. Jakel denies that he intentionally released toxic chemicals as alleged. Further, he indicates that reducing or eliminating emissions and discharges of toxic chemicals; providing warnings regarding exposure to toxic chemicals; handling and storage of hazardous materials; and the maintenance, repair and replacement of equipment were not personal duties or responsibilities delegated to him, but rather were general administrative responsibilities of management. According to Jakel these duties were "properly delegated to qualified individuals" within departments at Georgia Gulf. Finally, Jakel denies that he had prior knowledge indicating the events of September 17, 2006, were likely to occur or that the operation of any of the equipment posed a danger to anyone. Plaintiffs have not responded with any evidence controverting Jakel's assertions. As in *Guillory* we find that defendant has borne its burden of establishing no possibility of recovery against Jakel.

Accordingly, Jakel's citizenship can be disregarded for purposes of assessing whether there is complete diversity, and it was not necessary for Defendant to obtain his consent to removal. Further, "[s]ummary judgment will always be appropriate in favor of a defendant against whom there is no possibility of recovery. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98,

102 (5th Cir. 1990).[3]

Citizenship of Georgia Gulf

Plaintiffs also argue that Georgia Gulf is a citizen of Louisiana. Georgia Gulf Lake Charles, LLC is a limited liability company organized under the laws of the state of Delaware and is a wholly-owned subsidiary of Georgia Gulf Corporation. Exh. A, Memorandum in Opposition. Georgia Gulf Corporation is a Delaware Corporation with its principal place of business in Atlanta, Georgia. *Id.*

The parties disagree over how the citizenship of Georgia Gulf, a limited liability company, is determined for the purpose of assessing diversity. Defendant contends that since Georgia Gulf is an unincorporated association only the citizenship of its members is material. In this case there is only one member, Georgia Gulf Corporation; and Georgia Gulf Corporation is a citizen of Delaware and Georgia. Plaintiffs argue that Georgia Gulf, the limited liability company, should be considered a "citizen" independent of its sole member, Geogia Gulf Corporation.

*Carden v. Arkoma Associates*, 110 S.Ct. 1015 (1990) addressed the issue of how an unincorporated association should be treated when assessing the existence of diversity jurisdiction. The court noted that it had often had to consider the status of artificial entities created by state law insofar as that status bore upon the existence of federal jurisdiction. It also noted that with the exception of corporations and a *sociedad en comandita* created under Puerto Rican civil law, it had "firmly resisted" treating such entities as "citizens." *Id.* at 1018. In

---

[3] The parties were previously notified that if it was determined that Jakel was fraudulently/improperly joined that this court would enter a *sua sponte* summary judgment in Jakel's favor. See 6/26/07 Minute Entry.

7

holding that a limited partnership was not a "citizen" the court specifically rejected the argument that the court should look behind the particular entity's characterization as incorporated versus unincorporated. *Id.* The court went on to state:

> There could be no doubt, after *Bouligny*, that at least common-law entities (and likely all entities beyond the Puerto Rican *sociedad en comandita*) would be treated for purposes of the diversity statute pursuant to what *Russell* called "[t]he tradition of the common law," which is "to treat as legal persons only incorporated groups and to assimilate all others to partnerships." *Id.*
> . . . .
> The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction. We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision. *Id.* at 1022

The Fifth Circuit has not specifically addressed the issue of whether a limited liability company should be treated as a "citizen" for purposes of diversity jurisdiction. It has, however, consistently treated other unincorporated associations as having the citizenship of each of its members. *See Corfield v. Dallas Glen Hill LP*, 355 F.3d 853 (5th Cir. 2003) (limited liability partnership); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877 (5th Cir. 1993) (Lloyd's plan); *Temple Drilling Co., v. Louisiana Ins. Guar. Ass'n*, 946 F.2d 390 (5th Cir. 1991) (Louisiana Insurance Guaranty Association); *Hummel v. Townsend*, 883 F.2d 367 (5th Cir. 1989) (Reorganized Church of Jesus Christ of Latter Day Saints). Every other circuit that has considered the treatment of limited liability companies has concluded that they are not "citizens" for purposes of diversity jurisdiction. *Wise v. Wachovia Securities, LLC*, 450 F.3d 265 (7th Cir.

2006); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006) (". . . every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction."); *Pramco v. San Juan Bay Marina*, 435 F.3d 51 (1st Cir. 2006) (". . . every circuit to consider this issue has held that the citizenship of a limited liability company is determined by the citizenship of all of its members."); *General Technology Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004); *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020 (11th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dept. Stores*, 357 F.3d 827 (8th Cir. 2004); *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 Fed.Appx. 731 (6th Cir. 2002); *Handelsman v. Bedford Village Assocs. Ltd P'ship*, 213 F.3d 48 (2nd Cir. 2000). Absent action by Congress Georgia Gulf's citizenship is determined by the citizenship of its member, Georgia Gulf Corporation.

Plaintiffs cite 28 U.S.C. § 1332(d)(10) in support of their argument that Georgia Gulf should be considered a citizen of both the state of its principal place of business (Louisiana), and the state under whose laws it is organized (Delaware). Subsection (d) of 28 U.S.C. § 1332 was added by the Class Action Fairness Act of 2005, Pub.L. 109-2, § 4. It was added in order to expand the grant of diversity jurisdiction in large interstate class actions. The provision cited by Plaintiffs states:

> **For purposes of this subsection and section 1453**, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized. (emphasis added).

This provision does establish that an unincorporated association, including a limited liability company, is a "citizen" for diversity purposes, but it also specifically limits its application to class actions covered by subsection (d) and 28 U.S.C. § 1453 (dealing with

removal of class actions). This provision has no application to the present case. Accordingly, Georgia Gulf is not a citizen for the purpose of assessing diversity jurisdiction. It is considered as having the same citizenship as Georgia Gulf Corporation, its sole member.

Pursuant to 28 U.S.C. § 1332(c)(1) Georgia Gulf Corporation is considered to be a citizen of both the state of its incorporation and the state where it has its principal place of business. It is undisputed that Georgia Gulf Corporation's state of incorporation is Delaware. Although Plaintiffs' reasoning is less than clear they apparently contend that Georgia Gulf Corporation's principal place of business is in Louisiana. This contention is simply not supported by the record.

A corporation's principal place of business is determined by application of the "total activity test." *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 876 (5th Cir. 2004). Under this test the court must consider both the location of the corporation's "nerve center" and its "place of activities" and determine which predominates. *Id.* Where the corporation's operations are far flung the sole nerve center is more significant in determining the principal place of business. *Id.* When the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater weight. *Id.* Applying these principals to the facts of this case it is clear that Georgia Gulf Corporation's principal place of business is not in Louisiana.

Georgia Gulf Corporation is primarily a holding company with headquarters located in Atlanta, Georgia. Mark Buckis' Affidavit. Its assets consist primarily of intangible ownership interests in subsidiaries including Georgia Gulf. *Id.* Georgia Gulf Corporation's subsidiaries owned and operated more than 35 production facilities and warehouses in eleven states, seven

Canadian provinces, Mexico, and the Phillippines. *Id.* Only two are located in Louisiana, including the Georgia Gulf plant at issue in this suit. *Id.* Of more than 6000 full-time employees less than 10% are employed at locations within Louisiana. *Id.* It lists Atlanta as its principal place of business on its most recent annual report. Exh. A-1, Memorandum in Opposition. Meetings of its board of directors take place in Atlanta. Mark Buckis' Affidavit. All officers and directors maintain offices at the Atlanta headquarters. *Id.* The corporation's primary records and major bank accounts are maintained in Atlanta. *Id.* Monthly officers meeting are held at the Atlanta headquarters and all major management and financial decision are made in Atlanta. *Id.*

Amount in Controversy

Original jurisdiction under 28 U.S.C. § 1332 requires, in addition to complete diversity, that the matter in controversy exceed the sum of $75,000. In Louisiana plaintiffs are generally prohibited from alleging a monetary amount of damages in the petition. La. Code Civ. P. Art. 893(as amended by Acts 2004, No. 334).    However, Plaintiff is required to make an allegation regarding the amount of damages when necessary to establish the ". . . *lack* of jurisdiction of federal courts *due to insufficiency of damages* . . ." La. Code Civ. P. Art. 893 (in pertinent part)(emphasis added). Plaintiffs have alleged that the "damages sought . . . are insufficient to entitled either party to a jury trial." In Louisiana either party is entitled to a jury trial where a plaintiff's cause of action exceeds fifty thousand dollars. La.Code Civ. P. Art. 1732. We will assume that the allegation that damages are insufficient for a jury trial is equivalent to alleging that the damages are insufficient for jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiffs' allegations that their damages are insufficient to satisfy the amount in controversy requirement of diversity jurisdiction are presumptively correct. *De Aguilar v.*

*Boeing Co.*, 47 F.3d 1404 (5th Cir. 1005). However, this presumption can be rebutted by the defendant showing by a preponderance of the evidence that the amount is controversy is greater than $75,000. *Id.* at 1412. "The defendant may make this showing in either of two ways: (1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth facts in controversy--preferably in the removal petition, but sometimes by affidavit--that support a finding of the requisite amount.'" *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999)(citing, *Luckett v. Delta Airlines, Inc.*, 171 F.3d. 295 (5th Cir. 1999)). Once defendant successfully rebuts the presumption removal is proper, provided plaintiff has not shown that it is legally certain that his recovery will not meet or exceed the jurisdictional amount. *De Aguilar, supra.*

Plaintiffs allege that as a result of their exposure to toxic chemicals they have each suffered respiratory illnesses, pulmonary disease, neurological deficits and gastrointestinal problems with various combinations of symptoms including but not limited to headaches, nausea, dizziness, skin irritation, sinus irritation, eye irritation, chest congestion, diarrhea, and throat irritation. It is further alleged that this has resulted in "past and future emotional and physical pain and suffering, severe emotional distress, and loss of enjoyment of life." Alleged damages include past and future medical expenses (including hospital expenses), and, possibly, loss of earning capacity.[4]

In *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) the court found that is was facially apparent that the requisite jurisdictional amount was in controversy where the complaint

---

[4] No possible loss of earning capacity is claimed in Smith v. Georgia Gulf Lake Charles, LLC, 07 CV 0059.

alleged "damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and [Plaintiff's] temporary inability to do housework." It again found that it was facially apparent that more than $75,000 was in controversy in *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000). There the plaintiff alleged injuries to her wrist, knee and back. She claimed damages for "medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement." *Id.* at 883. In contrast, the court found that it was not facially apparent that the requisite jurisdictional amount was in controversy in *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848 (5th Cir. 1999). The plaintiff in Simon alleged that she suffered from an injured shoulder, bruises, and abrasions. She also alleged non-specific medical expenses but the court found it significant that she "did not allege any damages for loss of property, emergency transportation, hospital stays, specific types of medical treatment, emotional distress, functional impairments, or disability." *Id.* at 851.

Plaintiffs allegations more closely resemble those found in *Luckett* and *Gebbia* than those found in *Simon*. Further Defendant has cited cases that suggest that awards of well over the jurisdictional amount may be justified based on the allegations of Plaintiffs. For example, the court affirmed an award of an average of over $100,000 to twenty named plaintiffs in *In re New Orleans Train Car Leakage Fire Litigation*, 795 So.2d 364 (La.App. 4th Cir. 2001). The case arose out of a tank car fire in a heavily populated area. The car burned for over a day and neighboring residents were evacuated. There were no deaths or serious injuries. The court noted that almost all of the damages were for physical pain and suffering, mental anguish and evacuation and inconvenience. *Id.* at 392. This court concludes that it is facially apparently that

13

more than $75,000 is in controversy.

Since the defendant has borne its burden in order to defeat removal Plaintiffs must show that it is legally certain that their recovery will not meet or exceed the jurisdictional amount. Louisiana law allows a plaintiff to recover more than what is claimed in his petition. La.Code Civ. P. Art. 862. Moreover, there is nothing that would prevent the plaintiffs from amending their complaint to ask for more than $75,000. Thus, the allegation that damages are insufficient for a trial be jury do not make it legally certain that Plaintiffs will recover no more than $50,000 in damages.

Plaintiffs have filed post-removal affidavits whereby they purport to "stipulate that my damages in the foregoing Petition do not exceed $50,000.00 (Fifty Thousand Dollars), exclusive of interest and costs." Exh. B, Plaintiff Reply to Opposition. However, "if it is facially apparent from the petition that the amount in controversy exceed $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). Plaintiffs have failed to show that it is legally certain that they will recover no more than $75,000. Accordingly, this court concludes that the amount in controversy requirement for removal is satisfied.

Conclusion

All plaintiffs are citizens of Louisiana. Jakel is also a citizen of Louisiana but he was fraudulently/improperly joined so that his presence can be ignored when assessing whether there is complete diversity. Further, it was not necessary that Defendant obtain Jakel's consent to removal. Georgia Gulf is not a "citizen" for the purposes of 28 U.S.C. § 1332. In assessing

diversity the citizenship of its sole member, Georgia Gulf Corporation, is considered. Georgia Gulf Corporation is a citizen of Delaware and Georgia. Thus, there is complete diversity. Further, it is "facially apparent" that Plaintiffs' claims satisfy the amount in controversy requirement of 28 U.S.C. § 1332, and Plaintiffs have not shown that it is legally certain that they will recover no more than $75,000.

For the foregoing reasons it is recommended that the motions to remand be denied and that a *sua sponte* summary judgment be entered dismissing all plaintiffs' claims against Mark Jakel.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 12th day of July, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE